IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:22-cv-00139-MR-WCM

| | |
|---|---|
| **MEGAN LEE STUDIO, LLC,** ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> **TIEGUYS.COM, INC.** ) <br> *doing business as* ) <br> Three Rooker Necktie Company, ) <br> **ALEXANDER JARMOLYCH, and** ) <br> **SHAWNA JARMOLYCH,** ) <br> ) <br> Defendants. ) <br> _____ ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Defendants' Motion to Dismiss [Doc. 11].

## I. PROCEDURAL BACKGROUND

The Plaintiff, Megan Lee Studio, LLC ("Plaintiff"), filed this action on July 21, 2022, against Defendants TieGuys.com, Inc. d/b/a Three Rooker Necktie Company ("TieGuys"), Alexander Jarmolych, and Shawna Jarmolych (collectively, "Defendants"). [Doc. 1]. The Complaint asserted a cause of action for copyright infringement pursuant to 17 U.S.C. § 101 et seq. against all Defendants and a cause of action for "vicarious copyright

infringement" against Defendants Alexander and Shawna Jarmolych. [Id.]. On August 26, 2022, the Defendants filed a Motion to Dismiss the Complaint pursuant to Rules 12(b)(2), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure. [Doc. 7].

On September 8, 2022, the Plaintiff filed an Amended Complaint, asserting the same causes of action as the Original Complaint but containing additional allegations and exhibits. [Doc. 10]. On September 9, 2022, the Defendants filed a Motion to Dismiss the Amended Complaint pursuant to Rules 12(b)(2), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure, arguing that this Court lacks personal jurisdiction, that venue is improper, and that the Amended Complaint fails to State a claim against Alexander and Shawna Jarmolych. [Doc. 11]. On September 23, 2022, the Plaintiff filed a Motion for Leave to Permit Early Limited Discovery and for Extension of Time, requesting that it be permitted to conduct limited discovery via interrogatories and requests for production related to the issue of personal jurisdiction. [Doc. 13]. The Court granted the Plaintiff's Motion on October 31, 2022, and the Plaintiff conducted its requested limited discovery. [Doc. 19].

On December 1, 2022, the Plaintiff filed a Response in Opposition to the Defendants' Motion to Dismiss. [Doc. 20]. On December 7, 2022, the

2

Case 1:22-cv-00139-MR   Document 25   Filed 08/30/23   Page 2 of 19

Defendants filed a Reply to the Plaintiff's Response. [Doc. 21]. Accordingly, this matter has been fully briefed and is ripe for disposition.

## II. STANDARD OF REVIEW

Under Rule 12(b)(2), a defendant must affirmatively raise a personal jurisdiction challenge. The plaintiff, however, bears the burden of demonstrating personal jurisdiction at every stage following such a challenge. Grayson v. Anderson, 816 F.3d 262, 267 (4th Cir. 2016). "[A] Rule 12(b)(2) challenge raises an issue for the court to resolve, generally as a preliminary matter." Id. at 267.

Where, as here, the parties have had "a fair opportunity to present to the court the relevant facts and their legal arguments before it rules on the motion," the Plaintiff must prove facts, by a preponderance of the evidence, that demonstrate the Court's personal jurisdiction over the Defendants. Id. at 269 ("[T]o apply the preponderance of the evidence standard before trial, 'a court may take most of the evidence . . . by affidavits, authenticated documents, answers to interrogatories or requests for admissions, and depositions.'" (second alteration in original) (quoting Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 676 (1st Cir. 1992))).

## III. FACTUAL BACKGROUND

The Plaintiff is a limited liability company formed under the laws of North Carolina. [Doc. 10 at ¶ 2]. Defendant TieGuys is a corporation formed under the laws of Florida. [Id. at ¶ 3]. Defendant Alexander Jarmolych is the registered agent and director of TieGuys and resides in Tarpon Springs, Florida. [Id. at ¶ 5]. Defendant Shawna Jarmolych also resides in Tarpon and is the bookkeeper for TieGuys but does not exercise supervisory authority over anyone else in the company.[1] [Id. at ¶ 6; Doc. 12-1: Jarmolych Aff. at ¶ 3].

Asheville-based artist Megan Lee Welch ("Welch") publishes, promotes, and sells her original artwork through the Plaintiff. [Doc. 10 at ¶¶ 12-13]. At issue in the present action is a particular work of visual art authored by Welch, a mosaic highlighting fifty different scientists (the "50 Rock Star Scientists Mosaic" or "the Mosaic"). [Id. at ¶ 13]. The 50 Rock Star Scientists Mosaic features fifty individual rectangular blocks that each have a "faux-antique" appearance and an illustration representing the "work and

---

[1] The Plaintiff alleged in its Amended Complaint that Shawna Jarmolych was at all times relevant an "officer" of TieGuys; however, the Plaintiff has not presented any evidence to support that allegation. See Oppenheimer v. Chesnut-Toupin, No. 1:17-cv-00284-MR, 2018 WL 4682347, at *2 (W.D.N.C. Sept. 28, 2018) ("[W]here a defendant submits some form of evidence to counter plaintiff's allegations, the unverified allegations of a plaintiff's complaint can no longer be taken as true.").

historical impact of a scientist." [Id.]. Each scientist's last name and year of birth appears below their respective illustration. [Id.].

The U.S. Copyright Office issued the Plaintiff a copyright registration for the two-dimensional design of the 50 Rock Star Scientists Mosaic on May 8, 2017. [Id. at ¶ 15]. The Plaintiff continues to own the copyright in the 50 Rock Star Scientists Mosaic and sells promotional goods, such as stickers, t-shirts, and prints, bearing the Mosaic online via Etsy. [Id. at ¶¶ 17, 19]. The Plaintiff has also given permission for the Mosaic to be featured on various television programs. [Id. at ¶ 18].

The Defendants own and operate online retail stores accessible at www.tieguys.com and www.three-rooker.com ("the TieGuys websites"). [Id. at ¶ 20]. Through the online retail stores, the Defendants sell a variety of neckties and accessories. [Id. at ¶ 21]. One of the ties sold by the Defendants features a pattern of rectangles bearing an illustration, scientist name, and scientist year of birth arranged in a mosaic pattern. [Id. at ¶ 26]. The Plaintiff alleges that this tie infringes its copyright in the Mosaic. [Id. at ¶ 35].

While the Defendants' websites are accessible in North Carolina, the Defendants have not sold any of the allegedly infringing ties to a North Carolina customer. [Doc. 12-1: A. Jarmolych Aff. at ¶ 6]. TieGuys has, however, sold other products to customers in North Carolina and has

5

shipped orders to North Carolina. [Doc. 20-1: Defendants' Answers to Interrogatories at 3]. Specifically, since 2014, TieGuys has shipped 905 orders to North Carolina. [Id.]. However, only 745 orders were actually purchased by North Carolina customers during that time frame.[2] [Id.]. TieGuys sales to North Carolina account for 0.45% of its total revenue since 2014. [Id.]. TieGuys also sells some products featuring North Carolina sports teams, as well as ties featuring team logos from other States. [Doc. 10-3 (displaying ties featuring North Carolina sports team logos and showing a drop-down menu allowing a user to select other States and teams)]. TieGuys has no other contacts with North Carolina.

## IV. DISCUSSION

The Defendants argue that this Court lacks personal jurisdiction. For the Court to have personal jurisdiction, the Plaintiff must prove, by a preponderance of the evidence, that exercising jurisdiction will (1) comply with the forum State's long-arm statute and (2) comport with the due process requirements of the Fourteenth Amendment. See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003). Because North Carolina's long-arm statute has been construed to extend as far as

---

[2] Defendants' answer to this interrogatory does not make clear whether all 745 orders were shipped to North Carolina.

6

due process allows, this two-pronged test is collapsed into the single inquiry of whether the exercise of personal jurisdiction over the defendant comports with due process. Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558-59 (4th Cir. 2014).

A court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has sufficient "minimum contacts" with the forum such that to require the defendant to defend its interest in that State "does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). The sufficiency of the contacts depends on whether a case involves "the exercise of 'specific' or 'general' jurisdiction." Fidrych v. Marriott Int'l, Inc., 952 F.3d 124, 131 (4th Cir. 2020). If a defendant has contacts with the forum that are "so constant and pervasive as to render it essentially at home in the forum State," then a court may exercise general jurisdiction to her "any and all claims against the defendant." Id. at 131-32 (internal quotations omitted) (quoting Daimler AG v. Bauman, 571 U.S. 117, 122 (2014)). More limited contacts may give rise to specific jurisdiction to hear a particular suit when the suit "aris[es] out of or relate[s] to the defendant's contacts with the forum." Daimler AG, 571 U.S. at 127 (alterations in original) (internal quotations omitted) (quoting Helicopteros

7

Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984). The Plaintiff does not specify which type of jurisdiction it argues is applicable here, so the Court will consider whether it has either general or specific jurisdiction over the Defendants.[3]

"[O]nly a limited set of affiliations with a forum will render a defendant amendable to all-purpose jurisdiction there." Daimler AG, 571 U.S. at 137. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation it is an equivalent place, one in which the corporation is fairly regarded at home." Goodyear Dunlop Tires Ops., S.A. v. Brown, 564 U.S. 915, 924 (2011). "[T]he paradigm forums where corporations are fairly regarded as at home are the forums where it is incorporated and where it has its principal place of business." Fidrych, 952 F.3d at 132. While those are not the *only* forums in which a corporation could be subject to general jurisdiction, "only in the 'exceptional case' could contacts with another forum be 'so substantial and of such a nature as to

---

[3] The Plaintiff does not distinguish between Defendant TieGuys' contacts with North Carolina and the Jarmolyches' contacts, apparently assuming contacts of the former can be attributed to the latter. [See, e.g., Doc. 20 at 8-9]. However, "[i]n the typical case, the contacts of a company are not attributed to a corporate agent for jurisdictional purposes." ePlus Tech., Inc. v. Aboud, 313 F.3d 166, 177 (4th Cir. 2002). Because, as detailed below, the Court concludes that it lacks jurisdiction over Defendant TieGuys it is not necessary to determine whether any of TieGuys' contacts may be attributed to the Jarmolyches. The Plaintiff has not demonstrated that the Jarmolyches have any relevant contacts with North Carolina that differ from TieGuys' contacts, so the Court's lack of personal jurisdiction over TieGuys necessarily precludes personal jurisdiction over the Jarmolyches.

8

render the corporation at home in that State.'" Fidrych, 952 F.3d at 133. Merely demonstrating that a corporation has "contacts [that] can be said to be in some sense 'continuous and systematic,'" is insufficient to demonstrate that a corporation is subject to general jurisdiction. Daimler AG, 571 U.S. at 139 (quoting Goodyear, 564 U.S. at 919).

TieGuys is incorporated and headquartered in Florida, not North Carolina. Accordingly, it can only be subject to general jurisdiction in North Carolina if its contacts with the State render it essentially "at home" in North Carolina. TieGuys' contacts, however, fall well below that high bar. Its sales to the State "represent a small fraction of the company's overall operations" and "there is nothing that would distinguish [TieGuys'] relationship with [North Carolina] from its relationship with any of the other States where it does business but where it is not incorporated or headquartered." See Fidrych, 952 F.3d at 134. Thus, "this is not the exceptional case for general jurisdiction." Id. Accordingly, the Court concludes that neither TieGuys nor the Jarmolyches are subject to general jurisdiction in North Carolina.

Even though the Defendants are not subject to general jurisdiction in North Carolina, the Court could exercise specific jurisdiction if such an exercise would fall within the bounds of the Due Process clause. "The Due Process clause permits the exercise of specific personal jurisdiction over a

defendant if 'the defendant [has] purposefully established minimum contacts in the forum State such that it should reasonably anticipate being haled into court there.'" Fidrych, 952 F.3d at 138 (alteration in original) (quoting Perdue Foods LLC v. BRF S.A., 814 F.3d 185, 189 (4th Cir. 2016)). A defendant has purposefully availed itself of the privilege of conducting activities in the State if it "purposefully directed [its] activities at residents of the forum." Fidrych, 952 F.3d at 140 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)). In determining whether specific jurisdiction exists, the Court considers (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities; and (3) whether the exercise of personal jurisdiction would be constitutionally "reasonable." ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 711-12 (4th Cir. 2002). The Court will address each factor in turn.

Here, the Defendants' interactions with the forum State are limited to TieGuys' e-commerce activities. Specifically, TieGuys published a website available in North Carolina, accepted orders from North Carolina customers, and shipped products to North Carolina. Thus, to the extent the Defendants have minimum conducts with the forum State, all such conducts arise from internet activities.

The Fourth Circuit has adopted the "sliding scale" set out in Zippo Manufacturing Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997), to determine when electronic contacts with a State are sufficient to determine that a defendant has purposefully availed itself of the privileges of conducting business in the forum State. ALS Scan, Inc., 293 F.3d at 714. In Zippo, the court concluded that:

> [T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. This sliding scale is consistent with well developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

11

Case 1:22-cv-00139-MR   Document 25   Filed 08/30/23   Page 11 of 19

Zippo Manufacturing Co., 293 F.3d at 1124 (citations omitted). Accordingly, the Court must determine where along this sliding scale the Defendants' internet activities fall.

The Fourth Circuit's recent opinion in Fidrych v. Marriott International, Inc. is instructive as to where along the Zippo sliding scale the TieGuys websites fall. In Fidrych, the court considered the level of interactivity of Marriott's website, which allowed customers to input travel dates, view available hotels, and book rooms online. Fidrych, 952 F.3d at 142. The court concluded that while the website was not the *completely* passive website that the Zippo court concluded would not be grounds for the exercise of personal jurisdiction, its level of interactivity was still "relatively limited." Id. The court observed that "[t]he website is not used to create a continuing, back-and-forth relationship between Marriott and the website user; it is used to facilitate the making of a one-off hotel reservation. The website is thus in many ways the digital equivalent of a toll-free telephone number, providing a simple, cost-free way for customers to contact the company." Id.

TieGuys' websites are very similar to Marriott's website. The TieGuys websites allow users to browse and purchase available products. Much like in Fidrcyh, the TieGuys websites are "used to facilitate the making of a one-off" product purchase. Accordingly, the Court concludes that the interactivity

12

of the TieGuys website is relatively limited and does not demonstrate that TieGuys purposefully availed itself of the privileges of conducting business in North Carolina.

Moreover, the TieGuys website is not targeted at or directed to North Carolina residents. The Plaintiff argues that TieGuys "decided to sell ties bearing the insignia of North Carolina's colleges and sports teams to generate business from this State and from this District, thus specifically targeting customers from North Carolina to purchase Defendants' products." [Doc. 20 at 9]. However, review of the screenshots of the TieGuys websites provided by the Plaintiff reveals that visitors to the websites have the option of choosing "North Carolina Tar Heels Ties," "North Carolina Ties," "NC State Wolfpack Ties," "NC State Ties," "Duke Blue Devils Ties," "Duke Ties," "Hurricanes Ties," "Hornets Ties," or "Panthers Ties," from much longer lists of college and professional sports teams. [Doc. 10-3]. For example, one screenshot shows that the Plaintiff selected "North Carolina Ties" from a long list of States/teams, including Iowa, Arkansas, and California. [Id. at 8].

At the outset, the fact that the TieGuys websites sell products featuring the logos of colleges and teams located in the forum State is relatively thin evidence of any targeting of the forum State. As the Defendants note, those

13

institutions have fans and alumni who are not North Carolina residents and who may nonetheless purchase ties featuring North Carolina team logos. [Doc. 12 at 8-9]. Moreover, to the extent selling products featuring North Carolina logos shows any intent to target North Carolina residents, Fidrych forecloses a conclusion that such an activity could be construed as *specifically* targeting the forum State. In Fidrych, the Marriott website featured a drop-down menu which allowed users to select their State of residence from all fifty States. Fidrych, 952 F.3d at 142-43. The Fidrych court noted that the inclusion of a specific State on a list that included every other State "confirms that the website was accessible to all but targeted at no one in particular." Id. at 143. Here, products featuring North Carolina team logos are available from a menu featuring numerous other States' team logos. Accordingly, TieGuys was "target[ing] no one in particular." The fact that TieGuys sold products that may be of interest to North Carolina residents alongside products of interest to residents of every other State does not demonstrate that it purposefully availed itself of the privilege of conducting activities in North Carolina.

The cases cited by the Plaintiff are distinguishable. The Plaintiff cites Stephenson v. Jordan Wolkswagen, Inc., 428 F. Supp. 195 (W.D.N.C. 1977), a case in which the court exercised personal jurisdiction over an out-of-State

automobile wholesaler based on the wholesaler's sale of twenty-five vehicles to a North Carolina retailer. Stephenson, 428 F. Supp. at 197-98. However, in that case, the wholesaler made a series of sales to the North Carolina dealer over a ten-month period. Id. at 197. Unlike in the present case, where sales to North Carolina residents were one-off internet purchases, the defendant in Stephenson was engaged in a months-long business relationship with a North Carolina dealer. Moreover, in that case, the plaintiffs alleged that they were injured by one of the cars that the wholesaler sold to the dealer. Id. Here, none of the ties sold to North Carolina residents were the ties that allegedly infringed the Plaintiff's copyright.

Another case cited by the Plaintiff, Walker v. White, No. 1:06cv350, 2007 WL 1612451 (W.D.N.C. May 31, 2007), dealt with a factual situation entirely different from the present case. The Plaintiff cites Walker for the proposition that a defendant corporation need not be physically present in the forum state to have contacts sufficient for the exercise of personal jurisdiction. [Doc. 20 at 10]. While this is true in the abstract, the out-of-state corporation in Walker entered into a partnership with the in-state plaintiff and agreed that the plaintiff would manage a regional office of the corporation in the forum state. Walker, 2007 WL 1612451, at *3. The plaintiff in that case further alleged that he set up the regional office and marketed and sold the

15

defendant corporation's products *from that office*. Id. Accordingly, while the defendant corporation was not *itself* a resident of the forum state, it had set up a long-term business agreement with a forum state resident and had an office in the forum state. Id. This is not the situation in the present case where TieGuys' only interactions with forum state residents are one-off purchases and where TieGuys has no offices in North Carolina.

The Plaintiff also cites Akeva L.L.C. v. Mizuno Corp., 199 F. Supp. 2d 336 (M.D.N.C. 2002). Yet again, this case presents an entirely different set of facts than the present case. In Akeva, the question before the court was whether a foreign parent company was subject to personal jurisdiction in a State where the company sold goods only through its subsidiary. Akeva, 199 F. Supp. 2d at 338. The subsidiary in that case had significant contacts with the forum state and the court concluded that the parent company's relationship with the subsidiary subjected it to personal jurisdiction. Id. at 340. Here, the Plaintiff has not alleged that TieGuys has a subsidiary with more significant contacts with North Carolina.

Finally, the Plaintiff cites Hardy v. Pioneer Parachute Co., 531 F.2d 193 (4th Cir. 1976), a case in which an out-of-state corporation was subject to personal jurisdiction in a personal injury case after a parachute it sold directly to a forum state resident injured the resident. Hardy, 531 F.2d at 194-

16

95. In concluding that it had personal jurisdiction over the corporation, the court noted that "[a] single transaction is a sufficient contact to satisfy [the standards of due process] *if it gives rise to the liability asserted in the suit.*" Id. at 195 (emphasis added). Here, however, none of the relatively small number of transactions between TieGuys and North Carolina residents gave rise to the present suit. Accordingly, none of the cases cited by the Plaintiff support the conclusion that the Defendants' websites and the small number of purchases made by North Carolina residents using those websites are sufficient to show purposeful availment. Accordingly, the Court concludes that the Defendants did not purposefully avail themselves of the privilege of conducting activities in North Carolina.

Further, it does not appear that the present action arises from or relates to the very limited contacts the Defendants have with North Carolina. For a court to conclude that an action "arise[s] out of or relates to" a defendant's contacts with the forum State, "there must be an affiliation between the forum and the underlying controversy, principally [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1025 (2021) (second alteration in original) (quoting Bristol-Meyers Squibb Co. v. Superior Ct. of Cal., 582 U.S. 255, 262 (2017)).

Here, the Plaintiff does not allege that the design of the allegedly infringing tie took place in North Carolina or that any sales of the infringing tie occurred in North Carolina. The fact that the Defendants may have sold and shipped other products to the forum State is unrelated to the present action. And while the Plaintiff states that the alleged *injury* in this case occurred in North Carolina, the Supreme Court has consistently held that personal jurisdiction can only arise "out of conducts the defendant [itself] creates with the forum State. Put simply, however significant the plaintiff's contacts with the forum may be, those contacts *cannot be decisive* in determining whether the defendant's due process rights are violated." Fidrych, 952 F.3d at 143 (emphasis in original) (quoting Walden v. Fiore, 571 U.S. 277, 284-85 (2014)). Accordingly, the Court concludes that the present action does not arise out of the Defendants' limited conducts with the forum State.

Because the Defendants did not purposefully avail themselves of the privilege of conducting activities in the forum State and because the present suit did not arise from their limited contacts with the State, the exercise of personal jurisdiction would not be constitutionally reasonable. Accordingly,

the Court concludes that it cannot exercise jurisdiction over the Defendants and will dismiss the action without prejudice.[4]

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion to Dismiss [Doc. 11] is **GRANTED**.

**IT IS SO ORDERED.**

Signed: August 29, 2023

Martin Reidinger
Chief United States District Judge

---

[4] Because the Court concludes it lacks jurisdiction, it does not reach the Defendants' arguments that venue is improper or that the Plaintiff failed to state a claim against the Jarmolyches.